## McDONALD v. PRICE et al.

No. 2694.   Decided January 27, 1915 (146 Pac. 550).

1. MUNICIPAL CORPORATIONS—DISPOSITION OF PROPERTY—LIGHTING
PLANT. Though property such as streets, alleys, etc., held for
strictly corporate purposes may not be sold, a lighting plant
owned by a city is held in a proprietary right and may be
sold.[1]   (Page 466.)

2. STATUTES—VALIDITY—UNCERTAINTY—SALE OF PROPERTY OF MUNIC-
IPALITY.   Laws 1913, chap. 69, relating to the sale or lease of
lighting plants by a city, though commingling the provisions
as to lease and sale in an inartificial manner, is not void for
uncertainty.   (Page 467.)

3. CONSTITUTIONAL LAW—POWER OF LEGISLATURE—INTERFERENCE OF
COURT.   The discretion of the Legislature in providing, under
Laws 1913, chap. 69, that on the lease of a lighting plant by
a city there shall be an appraisement and bid contended to
be only applicable to a sale, cannot be interfered with by the
courts.   (Page 467.)

4. MUNICIPAL CORPORATIONS—DISPOSITION OF PROPERTY—LEGISLA-
TIVE CONTROL.   Though towns and cities are given power to
sell and lease their property, the Legislature may provide the
mode or method by or through which the power may be
exercised.   (Page 468.)

5. MUNICIPAL CORPORATIONS—DISPOSITION OF PROPERTY. If the
Legislature has provided a particular method to be followed
by cities and towns in disposing of their property, such method
must be at least substantially followed.   (Page 468.)

6. MUNICIPAL CORPORATIONS — DISPOSITION OF PROPERTY — STATU-
TORY REQUIREMENTS—"HIGHEST BIDDER."   Under Laws 1913,
chap. 69, a city, to lease a lighting plant, must appraise the
property, submit the question to voters, advertise bids, and
award to the highest bidder—that is, to the bidder who will
pay the highest amount of rent or render the greatest services
under the terms and conditions proposed by the city—and the
consideration must be used for city purposes.   (Page 469.)

---

[1]*Brown v. Salt Lake City*, 33 Utah 222; 93 Pac. 570; 14 L. R. A.
(N. S.) 619; 126 Am. St. Rep. 828; 14 Ann. Cas. 1004; *Ogden v.
Waterworks & Irr. Co.*, 28 Utah 25; 76 Pac. 1069.

Appeal from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Action by B. R. McDonald against Price, a municipal corporation, and others.

Judgment overruling a demurrer to the complaint and granting the relief prayed for. Defendants appeal.

AFFIRMED.

*C. C. McWhinney, M. P. Braffet, Ferdinand Ericksen* and *Samuel A. King,* for appellants.

*Price & Fouts* for respondent.

FRICK, J.

The plaintiff brought this action as a taxpayer of Price, a municipal corporation, hereafter called corporation, against said corporation; against the mayor and councilmen thereof; against its treasurer; and against one Manson, who is the lessee under a certain lease entered into by said corporation as lessor, and which the plaintiff, for reasons hereafter stated, asked to have vacated and annulled. The plaintiff, in his complaint, in substance, alleged the corporate existence of said corporation, and that Gunderson was its mayor, and the other five defendants the councilmen; that Hunten was its treasurer; and that J. H. Manson was the lessee under a certain pretended lease entered into by said corporation with him whereby said corporation, on the 31st day of March, 1914, pretended to "lease for a period of five years all of the lands, buildings, machinery, appliances, tools, and fixtures constituting the lighting and generating plant" owned by said corporation to said Manson. The facts respecting the making of said lease, and the terms and conditions thereof, are set forth in detail, and it is alleged that said lease is void and of no effect, for the reason that the mayor and councilmen, acting for said corporation, had failed and neglected to comply with the provisions of the laws of this state in entering into said lease; that said Manson is in possession and

control of said plant; that a demand upon said mayor and council to vacate said lease and to take possession of said lighting plant and operate it for the use and benefit of said corporation and its inhabitants had been made and refused. The defendants appeared and joined in a general demurrer to the complaint. The court overruled the demurrer, and, after the defendants had elected not to plead further, but to abide by their demurrer, the court entered judgment canceling said lease, and ordered the lessee to surrender the leased property to said corporation. The defendants appealed, and entered into a supersedeas bond staying the execution of said judgment pending appeal.

Plaintiff's counsel contend that the lease in question is invalid: (1) Because the mayor and city council had no authority under the law to sell the lighting plant; and (2) because they refused to comply with the provisions of chapter 69, Laws Utah 1913, p. 110, in which the particular method which must be pursued by the city authorities in leasing such property is specifically provided for.

The first contention is based upon the claim that the cities of this state do not possess the power to sell and dispose of their property which is devoted to, and used for, corporate purposes. As to property such as streets, alleys, parks, public buildings, and the like, although the title is in the city, yet such property, it may be said, is held in trust for strictly corporate purposes, and, as a general rule, cannot be sold or disposed of so long as it is being used for the purposes for which it was acquired. Lighting plants do, however, not come within that class. Waterworks and lighting plants which are used by the cities of this state for the purposes of distributing water, light, and power or either, to the inhabitants for profit, are held by what is usually termed a proprietary right and unless prohibited by some statute, may be sold, leased, or disposed of by the city at any time when, in the judgment of the authorities, it is for the best interests of the city to do so. While, under the Constitution of this state, cities may not sell or dispose of their water systems, yet they hold and operate them in a proprietary, and not in a governmental, ca-

pacity.   The same rule applies to lighting plants.   *Brown* v. *Salt Lake City*, 33 Utah 222; 93 Pac. 570; 14 L. R. A. (N. S.) 619; 126 Am. St. Rep. 828; 14 Ann. Cas. 1004; *Ogden* v. *Waterworks & Irr. Co.*, 28 Utah 25; 76 Pac. 1069.   The first contention must therefore fail.

The second proposition, as we have seen, is, however, based upon a special act.   That act, in substance, provides:   That whenever the authorities of any city or town shall deem it advisable to sell its lighting plant, then they shall **2, 3** cause an appraisement to be made of the property which is to be sold or leased as in the act provided; that said authorities shall also submit the question of whether said plant shall be sold or leased to the vote of the qualified electors of such city or town at a general election or at a special election called for that purpose.   The manner of holding and conducting the election is provided for in the act.   It is further provided that, in case a majority of the qualified voters voting at said election shall vote in favor of selling or leasing the property, then the city or town authorities shall cause a notice to be published in some newspaper published and having general circulation in such city or town for at least twenty days, which notice shall contain a general description of the property to be sold or leased, and shall specify the time when sealed bids for said property or for a lease thereon will be received, and the time when and the place where the bids will be opened.   It is further provided that at the time and place specified in the notice all bids received for the sale or lease of the property, as the case may be, shall be opened and considered, and the authorities shall accept the bid of the highest responsible bidder.   In case of a sale the bid must be equal to the appraised value of the property, and in such case no offer shall be accepted which is not equal to the amount of the outstanding bonds which were sold for the construction of the plant.   The other provisions apply only in case of a sale of the property, and hence are not relevant here.

The defendants contend that this act is so vague and uncertain in its provisions respecting a lease that it is void for uncertainty.   We think otherwise.   While the act is inartifi-

cially drawn, and, in many respects, might well be made clearer, yet it is not so vague and uncertain that its provisions cannot be ascertained and enforced. We think the legislative intent can readily be ascertained if the act is read with even ordinary care. It is true that, because the provisions which relate to the selling, as well as those relating to the leasing of the property, are commingled, the act in some respects seems obscure and uncertain. If, however, only reasonable care is exercised in segregating the provisions which refer to a sale from those intended to apply in case of a lease, there is no reason why the provisions of the act cannot be readily understood and followed in detail. It is contended that the provisions with regard to an appraisement of the property and calling for bids has, and can have, no practical application in case the property is intended to be leased, and not sold. We can see no objection whatever to requiring an appraisement and advertising for bids whether the property is intended to be leased or sold. In either event it may prevent favoritism. In case of sale it also may prevent a sale for less than the actual value of the property; while in case of lease it may prevent a lease for too low a rental, and certainly gives every applicant the same opportunity to bid. The whole matter was, however, one that was within the discretion of the Legislature, and the courts have no right to interfere with that discretion if legally and sufficiently expressed. Moreover, it is manifest from the act that the Legislature intended that, if any town or city owning a lighting plant desires to sell or lease the same, the authorities shall not do so until they have submitted the question of sale or lease, as the case may be, to a vote of the qualified electors of such city or town for their approval. The question, as argued by counsel, is not one of power to sell, but it is one respecting the exercise of that power.

While the towns and cities of this state are given power generally to sell, lease, or dispose of their property, yet it is clearly within the province of the Legislature to provide the mode or method by or through which the power may be exercised. This may be done with respect to all or only a particular kind of property. If the

4, 5

Legislature has provided a particular method to be followed by the cities and towns in selling or leasing, or otherwise disposing of, their property, such method must be at least substantially followed. This is elementary. 28 Cyc. 664; 3 McQuillan, Mun. Corps, section 1180. In Cyc. it is said:

"If no formal mode of making a municipal contract is prescribed by charter, statute, or ordinance, then the contract may be made in the method common to all corporations. But if the method of contracting is prescribed by valid law, that method must be observed, and a contract unexecuted in whole or in part, made in any other method, or defectively made by the prescribed method, may not be enforced at the suit of either party."

McQuillan says:

"If certain steps must be taken before or after a contract is entered into, but they are not taken, the contract is invalid. For example, statutes or charter provisions sometimes prescribe that particular contracts shall not be entered into unless authorized or ratified by a majority vote of the electors."

Where such is the case, of course, the method prescribed must be observed and followed, or the contract, whatever it may be, is invalid.

The act in question, in our judgment, clearly indicates that, in case the city authorities deem it wise to lease its lighting plant, then such city or town must first appraise the property sought to be leased; that the question of whether it shall be leased must be submitted to the vote of the qualified electors for their approval or rejection; that bids must be advertised for and received; that the property must be leased to the highest responsible bidder—that is, to the bidder who will pay the highest amount of service under the terms and conditions proposed by the town or city; that the money, or other thing of value, that is received as rent is to be used for town or city purposes the same as other city or town money or property. The foregoing is, as a matter of course, a mere summary of the essential things required to be done, and is not intended to give the details of the acts to be done. We can see no good reason why the conditions imposed by the act cannot be complied

with.   Whether the conditions imposed are wise, or whether others more simple would not have been better, is not for us to determine.

We think the district court committed no error in over-ruling the demurrer and in entering the judgment appealed from.

The judgment is therefore affirmed, with costs.

STRAUP, C. J., and McCARTY, J., concur.